IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAUL FELD and ADA FELD, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | CIVIL NO. 4:12-CV-01492 |
| | : | |
| PRIMUS TECHNOLOGIES | : | (Judge Brann) |
| CORPORATION and | : | |
| VINCE KLARSCH, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**
May 15, 2015

Currently pending before the Court are Plaintiffs' and Defendants'
objections regarding certain questions and answers in videotaped depositions of
three witnesses.  (ECF Nos. 105-09).  As explained below, certain objections will
be sustained and portions of the depositions stricken, while other objections are
overruled.

## I.    **Background**

On July 31, 2012, Plaintiffs Shaul Feld and Ada Feld filed a Complaint
against Defendant Primus Technologies Corporation ("Primus") and John Doe.
(ECF No. 1).  This Complaint was subsequently amended on February 6, 2014 to
name Defendant Vince Klarsch.  (ECF No. 42).  Plaintiffs allege negligence and
loss of consortium against both defendants.  Id.

On June 9, 2011, Mr. Feld was working as an employee of Orbotech, Inc. and was present at Primus' facility for the installation of a Sprint 100 industrial printing machine.  Id. at ¶ 9.  Mr. Klarsch, while acting within the course and scope of his employment, utilized a forklift to move the Sprint 100 to its installation location.  Id. at ¶ 12.  Plaintiffs allege that Primus failed to adequately train its employees in the proper use and operation of forklifts.  Id. at ¶ 22.  Mr. Klarsch allegedly did not place the forklift forks completely under the Sprint 100 and, as a result, the Sprint 100 began falling toward Mr. Feld.  Id. at ¶ 15.  This resulted in "severe and permanent injury" to Mr. Feld.  Id. at ¶ 16.

During the course of discovery, on July 15, 2013, a deposition was conducted of Nissim Moshenissimov.  (ECF No. 106, Ex. A).  Thereafter, on April 23, 2015, Saechin Kim, M.D., Plaintiffs' medical expert, was deposed.  (ECF No. 107, Ex. E).  Finally, on May 1, 2015, Defendants' medical expert, Robert R. Dahmus, M.D., was deposed.  (ECF No. 105, Ex. B).  All three videotape depositions will be offered at trial in lieu of live testimony.  Objections were timely lodged to certain questions and answers during the course of the depositions.

## II.  Discussion

### A. Deposition of Saechin Kim, M.D.

Primarily, the Defendants object to the testimony of Dr. Kim regarding Mr. Feld's shoulder injury, and any testimony related to Mr. Feld's "employability,

2

wage loss, or earning capacity." (ECF No. 107).  Specifically, Defendants argue that Plaintiffs failed to provide adequate notice of the expert testimony as required under the Federal Rules of Civil Procedure.  Id.  Secondarily, several objections were made over more mundane matters.  Id.

### 1. *Notice of Expert Testimony*

The Federal Rules of Civil Procedure provide that witnesses who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" must provide the opposing party with expert reports. Fed. R. Civ. P. 26(a)(2)(B). However, "treating physicians are not subject to the reporting requirements of Rule 26(a)(2)(B) if they form their opinion on causation or prognosis as part of the ordinary care of a patient." Pease v. Lycoming Engines, No. 4:10-CV-00843, 2012 WL 162551, at *13 (M.D. Pa. Jan. 19, 2012).

Where expert witnesses are not required to provide a written report, they must provide a disclosure which: (1) notifies the opposing party of the subject matter of their testimony, and (2) provides a summary of the fact and the opinions to which the witness is expected to testify.  Fed. R. Civ. P. 26(a)(2)(C).  "If a party fails to provide information or identify a witness [in the manner required by the Court under Rule 26], the party is not allowed to use that information or witness . .

. at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Although the Rules allow a court to disallow testimony based on lack of notice, the "exclusion of critical evidence is an 'extreme' sanction" which ordinarily should not be employed where any resulting prejudice is minimal. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-92 (3d Cir. 1994). In determining whether evidence or testimony should be excluded, courts must examine:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

Id. at 791 (quoting Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3d Cir. 1977)).

Dr. Kim's testimony regarding Mr. Feld's shoulder injury will not be stricken from the deposition materials. As an initial matter, Plaintiffs provided sufficient notice of Dr. Kim's testimony in accordance with this Court's previous Scheduling Order. (ECF No. 67). In their Pretrial Memorandum, Plaintiffs informed the Defendants that Dr. Kim would provide expert testimony. (ECF No. 78). In that Memorandum, the Plaintiffs stated that Dr. Kim would be expected to testify, *inter alia*, "to the nature of the injuries Plaintiff Shaul Feld sustained as a result of the June 9, 2011 incident[.]" Id.

In their Amended Complaint, the Plaintiffs allege that "[a]s a result of the . . . June 9, 2011 accident, Plaintiff Shaul Feld suffered serious, permanent and disabling injuries including . . . a left shoulder tear . . ."  (ECF No. 42, ¶ 17). Although broadly worded, the language used in the Pretrial Memorandum was sufficient to place the Defendants on notice that Dr. Kim would testify regarding Mr. Feld's shoulder injury.  Because the Amended Complaint makes clear that Plaintiffs assert Mr. Feld suffered a shoulder injury in the June 9, 2011 incident, it necessarily follows that any testimony relating to the injuries sustained during that incident would include testimony relating to the shoulder injury.  Plaintiffs have therefore provided sufficient notice to the Defendants, and Defendants objection will be overruled in that regard.

Even if the Court were to consider the notice insufficient, striking the testimony would be overly harsh given the relatively insignificant prejudice that occurred due to the lack of notice.  First, based on the Amended Complaint, Defendants knew that Mr. Feld's shoulder injury would be an issue at trial, and would therefore have known of the need to prepare a defense to any shoulder injury issues.  Second, Plaintiffs identified Dr. Kim as an expert witness prior to the court-imposed deadline, and "thus the defendants knew that he was going to testify." Paoli, 35 F.3d at 792.  Third, the Defendants "were also aware of the general substance of" Dr. Kim's testimony, and therefore had some opportunity to

prepare for cross-examination.  Id.  Given the "extremely minimal" prejudice Defendants have suffered, exclusion of the expert testimony regarding Mr. Feld's shoulder injury is not warranted.  Id.

Next, Defendants argue that any testimony from Dr. Kim relating to "employability, wage loss, or earning capacity" should be stricken from the deposition due to lack of notice.  (ECF No. 107).  First, Plaintiffs provided notice of the intent to have Dr. Kim testify "as to the relatedness of Mr. Feld's injuries to his inability to return to his pre-injury job."  (ECF No. 78).  Because Plaintiffs provided clear, unambiguous notice of such testimony, any line of questioning related to Mr. Feld's ability to perform his previous work will not be stricken from the deposition.

Relatedly, although Plaintiffs did not give notice as to Dr. Kim's testimony relating to Mr. Feld's ability to maintain other types of employment, any prejudice arising from this testimony is minimal.  Defendants were on notice that Dr. Kim would testify as to the impact Mr. Feld's injuries would have on his ability to return to his previous employment.  (ECF No. 107).  Such testimony would necessarily include a discussion of Mr. Feld's functional limitations; therefore, Defendants had notice of the need to defend against such testimony.

Dr. Kim's testimony related to other types of employment relied solely on Mr. Feld's functional limitations.  When asked about the injury's impact on future

employment, Dr. Kim stated that "because [Mr. Feld] had limited sitting and lifting and standing restrictions, he would have significant limitations on [sic] obtaining gainful employment." (ECF No. 107, Ex. E, pp. 59:24-60:3). Dr. Kim later iterated that Mr. Feld's injuries "affected his ability to do any kind of lifting or any kind of work where he would have to reach for things above the shoulder." Id. at 60:23-61:1. Finally, Dr. Kim testified that Mr. Feld "would have limited ability to find gainful employment in positions where he would have to have manual work with his left arm." Id. at 61:13-61:15.

This testimony related exclusively to functional limitations, and the related and logical discussion of how those functional limitations impacted Mr. Feld's ability to work. The discussion did not stray beyond Dr. Kim's area of expertise or beyond testimony that Defendants should reasonable have expected. Although Dr. Kim testified that Mr. Feld would have physical limitations that would impact his ability to work, Dr. Kim did not exclude all work. Id. Nor did Dr. Kim attempt to state what type of work Mr. Feld would be able to perform with his physical limitations, testimony that is properly left to a vocational expert.

The single identifiable exception was Dr. Kim's statement that Mr. Feld "would have significant limitations on [sic] obtaining gainful employment." Id. at 60:2-60:3. This testimony goes beyond Dr. Kim's area of expertise, and beyond the testimony that Defendants had reasonable notice Dr. Kim would provide.

Therefore, the line "he would have significant limitations on obtaining gainful employment" must be stricken from the deposition.  To the extent it is not possible to remove this portion of the videotaped deposition, the Court will issue a limiting instruction to the jury.

Finally, because Dr. Kim did not exclude Mr. Feld from all work, his testimony did not stray into the realm of lost wages or loss of earning capacity. While the testimony excluded Mr. Feld from performing his past work, he may still perform other forms of work, and therefore Dr. Kim's testimony did not establish a loss of earning capacity.  Thus, while the Court would agree that Dr. Kim may not offer testimony related to lost wages or loss of earning capacity, no such testimony occurred in the deposition, and Defendants' objection is overruled.

### 2. *Remaining Objections*

Defendants objected to the following exchange between Plaintiffs' counsel and Dr. Kim:

> Q.     Is [Mr. Feld's back pain] something that would be ongoing and into the future based on your evaluation of Mr. Feld?
>
> A.     This is something that he has, and I don't think I had done a follow-up evaluation of that because one wouldn't do it for a year or so afterwards, but this is something that one would follow to see if it got worse over time.

(ECF No. 107, Ex. E, p. 41:17-41:24).  Defendants assert that the answer is non-responsive.  Id. at 42:14-42:16.

The Court finds that this answer was responsive.  Although Dr. Kim did not answer as concisely or clearly as possible, his answer essentially boiled down to "I don't know and couldn't know unless I performed a follow-up examination." Because the answer was responsive, the question and answer shall remain, and the objection and subsequent discussion (Id. at 42:5-43:10) should be removed from the deposition prior to the jury viewing the recording.

Plaintiffs' attorney later objected to Defendants' counsel's line of questioning regarding Dr. Kim's retention as an expert witness.  Id. at 107:20-108:12.  Prior thereto, the following exchange took place between Defendants' counsel and Dr. Kim:

> Q.    And you've been hired as an expert by the plaintiff lawyer, correct?
>
> A.    Yes.
>
> Q.    When were you hired, sir? I don't need a specific date, but just generally.
>
> A.    A few months ago in 2015.
>
> Q.    Of course, nobody is expecting you to do this for free.
>
> A.    Yes.
>
> Q.    How much are you being paid, sir?

Id. at 69:17-70:2.

Questions regarding expert witness fees are proper because they potentially impact the witness' credibility.  E.g., Bridges v. O'Hearn, No. 3:10-cv-1065, 2012 WL 175408, at *4 (M.D. Pa. Jan. 20, 2012) ("the fees that the experts receive may be relevant to establish bias and may affect the manner in which the jury views the witnesses's credibility").  Similarly, questions relating to when Dr. Kim was hired as an expert are relevant to credibility.  Dr. Kim was Mr. Feld's treating physician, and therefore naturally garners an aura of credibility not bestowed upon physicians hired solely for the purposes of litigation.  Had Dr. Kim been retained as an expert prior to or during his treatment of Mr. Feld, this may have impacted Dr. Kim's credibility in the eyes of the jury.  Because this line of questioning was proper, it will not be stricken from the deposition.

Finally, Plaintiffs objected to a line of questioning regarding Mr. Feld's receipt of disability benefits.  The following exchange took place:

Q.     You mentioned that he was on disability. What do you know about that?

Mr. Ringland: Objection

A.     Just that he was told – just – I just know – he told me he was placed on disability.

Q.     Okay. Meaning he was getting paid to not work; right?

. . .

A.     Yes.

(ECF No. 107, Ex. E, pp. 90:10-91:19).

During this series of questions, Plaintiffs' counsel objected on the grounds that the questions were beyond the scope of direct-examination and were irrelevant.  Id. at 90:24-91:4.  First, the questions related to Mr. Feld's receipt of disability benefits were within the scope of the direct-examination.  During direct-examination, Plaintiffs' attorney asked Dr. Kim's if, based on his treatment notes dated December 29, 2011,[1] Mr. Feld was able to return to work at that time.  Id. at 39:17-39:21.  In response, Dr. Kim stated that Mr. Feld "was unable to return to work and was placed on disability."  Id. at 39:22-39:23.  This directly implicated Mr. Feld's disability claim, rendering it fair game for cross-examination.

Second, the questions related to disability payments are relevant to this case. Such questions are relevant to Mr. Feld's credibility, as the payments may establish that Mr. Feld has motive to claim disabling injuries in order to continue receiving disability benefits.  See generally, William H. Danne, Jr., Admissibility of Evidence That Injured Plaintiff Received Benefits From A Collateral Source, On Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R. 3d 234 (1973).  Consequently, both of Plaintiffs' objections are overruled, and the objections and resulting discussions should be stricken from the deposition.

_____

[1] The reference to Dr. Kim's December 29, 2011 notes is significant because, on that date, he noted "[Mr. Feld] brings in some paperwork. He has been placed on disability." (ECF No. 107, Ex. B, p. 22).  Thus, Plaintiffs' attorney was directly and intentionally implicating this notation.

**B. Deposition of Robert R. Dahmus, M.D.**

In the deposition of Robert R. Dahmus, M.D., Plaintiffs lodged three separate objections.  First, Defendants' attorney asked Dr. Dahmus whether he believed Mr. Feld's injuries were caused by the alleged accident on the day of June 9, 2011; Dr. Dahmus stated the he did not believe the incident caused Mr. Feld' injuries.  (ECF No. 105, Ex. B, p. 16:1-16:13).  Dr. Dahmus went on to elaborate that:

> the history and what [Mr. Feld] told me and my examination did not match. They didn't go together.
>
> He told me that this big object was falling off a forklift – a very heavy object was falling off a forklift. And he told me how he was standing in order to try to catch this object from falling.
>
> The way he described the way he was standing to catch the object did not go along with someone who injured their shoulder. That would not have happened with the way he had his arm positioned.

Id. at 16:15-16:25.  Plaintiffs' counsel objected to the question and answer on the grounds that Dr. Dahmus is not a biomechanical engineer and therefore is not qualified to discuss "an inanimate object" acting on the human body.[2]  Id. at 17:14-18:16.

---

[2] Counsel also objected on the grounds that Dr. Dahmus was carrying on outside the scope "of a very simple question."  (ECF No. 105, Ex. B, p. 17:14-17:19). Dr. Dahmus was asked to explain why he felt that Mr. Feld's injuries were not caused by the incident that occurred on June 9, 2011.  Id. at 16:1-16:7.  Dr. Dahmus' answer was pertinent to that question, and the length of the answer was necessary for him to be thorough in his answer.  Therefore, that objection is overruled.

In order for an expert witness to testify, he must be "qualified" to offer testimony.  Paoli, 35 F.3d at 741.  Qualification requires that a witness proffered to testify as an expert have specialized knowledge, skills, or training.  Id.  The United States Court of Appeals for the Third Circuit has interpreted this requirement liberally, allowing expert testimony of witnesses who have specialized knowledge or training even in the absence of formal qualifications.  Id.

Dr. Dahmus' testimony will be allowed.  First, the testimony offered by Dr. Dahmus is consistent with testimony that physicians may generally offer, and extended beyond that which a biomechanical engineer could offer.  This is so because "biomechanics are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury."  Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997).

Second, Dr. Dahmus adequately set forth his qualifications to render such an opinion.  Dr. Dahmus first stated that, based on his experience, he often must determine the cause of an injury and "[i]f someone comes in and tells me that [they] tripped and [] twisted [their] knee, I can almost guarantee what they have even before I examine them" and "I can look at [someone's] fracture and I can tell them wh[ere] their arm was when they hit the ground."  (ECF No. 105, Ex. B, p.

13:19-13:25).  Dr. Dahmus later stated that, in order to treat a patient, he is

required to determine whether the patient's description of an accident matches the

injuries sustained.  Id. at 14:4-14:14.  Finally, Dr. Dahmus asserted that, based on

this thirty years of experience as an orthopedic surgeon, he "[a]bsolutely" was able

to determine "what can or can't cause an injury to a body[.]"  Id. at 21:7-21:18.

In short, Dr. Dahmus laid forth sufficient qualifications and specialized

knowledge in this area to qualify as an expert.  He has the experience necessary to

offer an opinion as to the likelihood that the incident on June 9, 2011 caused Mr.

Feld's injuries, and Plaintiffs' objection is therefore overruled.[3]

Next, Plaintiffs objected to questions relating to Dr. Kim's opinion that Mr.

Feld's low back pain complaints in February 2011 were insignificant.  Id. at 34:4-

34:7.  After answering that he did not agree with Dr. Kim because an individual

can have two types of pain at the same time, Dr. Dahmus provided the following

supplemental statement:

> And actually to go a little further on that, when you think about it if
> someone comes into the emergency room with chest pain, I would be
> very worried that I was having a heart attack.  I don't think I would
> tell anybody about my low back pain because I would want them
> checking on my chest.  So I have to assume that it was probably pretty
> significant low back pain.

---

[3] Because the Court determines that the testimony was allowable, it is unnecessary to consider
Defendants' argument that Plaintiffs waived this objection by failing to file a timely motion *in
limine*.  (ECF No. 105, p. 3).

Id. at 34:23-35:5.  Plaintiffs' counsel objected on the grounds that the supplemental answer was speculative.  Id. at 35:10.

The Court agrees that the supplemental answer was speculative.  The very language employed by Dr. Dahmus, consistently speaking in the first person, indicates the speculative nature of the testimony.  Dr. Dahmus stated that he would be worried about the chest pain, and he would not inform the hospital that he had back pain.  Id.  None of this testimony invokes Dr. Dahmus' experience with patients, but rather states his own personal reactions, while speculating that Mr. Feld may think the same way.  Such testimony constitutes "unsupported speculation" and will be stricken from the deposition.  Paoli, 35 F.3d at 742.

Finally, Plaintiffs objected to the following testimony as speculative and non-responsive:

> Q.     So after - - when you saw Mr. Feld, it was after his own doctor had said he had reached maximum medical improvement. He had gotten as good as he was going to get; correct?
>
> A.     As far as Dr. Kim though, but Dr. Kim was also told the wrong information. So he may also have been told that I can't do it anymore, Doc. I just can't do it. He may have said that. I don't know.

(ECF No. 105, Ex. B, pp. 49:20-50:2).  The first line of Dr. Dahmus' answer was responsive to the question and was not speculative, and therefore will remain in the deposition.  However, the remainder of Dr. Dahmus' answer, beginning with "So he may also" and ending in "I don't know" was non-responsive to the question

15

asked and was entirely speculative.  Therefore, that portion of the answer will be stricken from the deposition.

### C. Deposition of Nissim Moshenissimov

Defendants object to the following question posed by Plaintiffs' attorney, and Mr. Moshenissimov's subsequent answer:

> Q.    Do you have any reason to believe that Shaul Feld was not injured at the Primus facility on June 9th of 2011?
>
> . . .
>
> A.    No.

(ECF No. 106, Ex. A, p. 59:23-60:4).  Defendants object on the grounds that Mr. Moshenissimov was not present at the time of the incident, has no personal knowledge of the incident, and any answer was "sheer speculation" that amounts only to an improper comment on Mr. Feld's credibility.  (ECF No. 106).

Mr. Moshenissimov's answer was not based on personal knowledge as required by Rule 602 of the Federal Rules of Evidence.  Mr. Moshenissimov admitted that he was not present at the Primus facility on June 9, 2011, and therefore could not have witnessed the incident.  (ECF No. 106, Ex. A, p. 60:5-60:13).  Furthermore, Mr. Moshenissimov's comment was not rationally based on his perceptions as required by Rule 701 of the Federal Rules of Evidence.  The statement exists solely to bolster Mr. Feld's credibility.  Neither the phrasing of the

question, nor the posture of the case would allow for such bolstering; therefore the question and answer were improper and will be stricken from the deposition.

Finally, during the May 22, 2015 conference call with the parties, counsel for the Defendants represented that Plaintiffs' subsequent objections were related to cross-examination that was conducted as a result of Plaintiffs' question to Mr. Moshenissimov. Therefore, counsel for the Defendants did not oppose sustaining the Plaintiffs' objections in the event that the Court ruled in Defendants' favor on their objection. Consequently, the Court will sustain Plaintiffs' objections and strike the relevant portions of the deposition (ECF No. 106, Ex. A, pp. 61:9-62:10; 62:21-63:12).

### D. Resolved Objections

Prior to raising objections with the Court, the parties addressed several outstanding objections and agreed to redact several portions of the depositions. In accordance with the parties' representations to the Court, the following portions of the transcripts will be stricken:

From Dr. Kim's deposition: pages 21:16-22:3; 33:17-33:24; 34:1-34:5; 73:21-73:24; 74:11-74:12; 74:18-76:13; 86:14-86:30; 87:12-87:14; 93:15-93:17; 94:8-95:4; and 106:16-106:17.

From Dr. Dahmus' deposition: page 50:4.

From Mr. Moshenissimov's deposition: pages 57:18-57:22 and 60:2-60:3.

**IV.**   **Conclusion**

For the foregoing reasons, Plaintiffs' objections are sustained in part and overruled in part.  Defendants' objections are likewise sustained in part and overruled in part.

A separate Order will issue.


BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge